## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                                    :
**KATHLEEN FOWLER**                       :
  **Manasquan, NJ 08736**                 :
                                                    :          **CIVIL ACTION NO. __**
        **Plaintiff,**                           :
                                                    :
        **v.**                                     :
                                                    :          **JURY TRIAL DEMANDED**
**AT&T, INC.**                                 :
  **208 S. Akard St.**                        :
  **Dallas, TX 75202,**                       :
                                                    :
        **and**                                   :
                                                    :
**AT&T SERVICES, INC.**                   :
  **208 S. Akard St.**                        :
  **Dallas, TX 75202,**                       :
                                                    :
                        **Defendants. :**
_____ :

## COMPLAINT

### I.    PRELIMINARY STATEMENT

Plaintiff, Kathleen Fowler, brings this employment discrimination action against

her former employer, AT&T, Inc. and AT&T Services, Inc. (collectively referred to

hereinafter as "AT&T" or "Defendants"), for violation of the Americans with Disabilities

Act, as amended, 42 U.S.C. § 12101, *et seq.*, ("ADA"), the Age Discrimination in

Employment Act, as amended, 29 U.S.C. § 621, *et seq.*("ADEA"), and the New Jersey

Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.* ("NJLAD").

Plaintiff was a long-serving, dedicated, and excellent employee of AT&T, whom

AT&T discriminated against because of her disability and age.  In January, 2016, while

in the midst of undergoing chemotherapy and known by AT&T to be a qualified

individual with a disability, Plaintiff was notified by AT&T that her position was being eliminated (which was not true) and that she was being placed on "surplus" status (meaning that she had to find another AT&T job within sixty days or she would be terminated), the stress of which exacerbated her condition. AT&T rejected Plaintiff's many applications for positions for which she was qualified, and placed Plaintiff into a new and different type of position, for which her requests for reasonable accommodation were denied. In October, 2016, AT&T again notified Plaintiff that her position was being eliminated (which was not true) and again placed her on surplus status. AT&T rejected Plaintiff's application for scores of positions for which she was qualified, and terminated her employment effective December 27, 2016, at the age of 60 with more than 30 years of service to the company.

Plaintiff seeks injunctive and declarative relief, damages, including economic, compensatory, liquidated, and punitive damages, and all other relief under the NJLAD, ADA, ADEA, and as this Court deems appropriate.

## II.   <u>PARTIES</u>

1. Plaintiff Kathleen Fowler is an individual and citizen of the state of New Jersey, residing therein in Manasquan, New Jersey 08736.

2. Plaintiff was born in September, 1956, and was age 60 at the time of her termination.

3. At all times material hereto, Plaintiff was a qualified individual with a disability within the meaning of the laws at issue, in that she suffered from a mental and/or physical impairment which substantially limited one or more major life activity,

had a record of such impairment, and/or was regarded or perceived by AT&T as having such impairment.

4. Defendant AT&T, Inc. is a Delaware corporation that is the parent company of several wholly-owned and controlled subsidiary corporations, including Defendant AT&T Services, Inc.

5. Defendants AT&T, Inc. and AT&T Services, Inc. maintain a principal place of business in the state of Texas.

6. Defendant AT&T, Inc. is the "alter ego" of its various subsidiary controlled companies, including Defendant AT&T Services, Inc.

7. Defendant AT&T, Inc., by and through its wholly-owned and controlled subsidiary corporation AT&T Services, Inc., maintains multiple places of business in New Jersey, including the offices at which Plaintiff worked; conducts business through its subsidiary companies, including AT&T Services, Inc., duly registered to transact business in the state of New Jersey and with registered agents located in New Jersey for service of legal process; maintains systematic and continuous activity such that it is at home in New Jersey; and has employed thousands of people in the state of New Jersey, including Plaintiff.

8. Defendant AT&T Services, Inc. is a Delaware corporation duly registered to transact business in the state of New Jersey, with a registered agent located in New Jersey for service of legal process.  It maintains several places of business located throughout the state of New Jersey, maintains systematic and continuous activity such that it is at home in New Jersey.

9.  Defendant AT&T, Inc., shares with its controlled subsidiary companies, including Defendant AT&T Services, Inc., *inter alia*, common ownership, management, administrative services, personnel, policies, and employment practices.

10. Defendant AT&T, Inc. and its subsidiary companies, including Defendant AT&T Services, Inc., hold themselves out to the public and their employees as an AT&T "family of companies" known as "AT&T" which, together and as one entity, employ over 270,000 people.

11. Defendant AT&T, Inc. and its subsidiary companies, including Defendants AT&T Services, Inc., are interconnected such that they are considered a "single" and/or "integrated" employer and/or enterprise.

12. AT&T, Inc. and AT&T Services, Inc. employed thousands of people in the state of New Jersey, including Plaintiff.

13. At all times material hereto, AT&T has been engaged in an industry affecting interstate commerce and has acted as an "employer" within the meaning of the ADEA, ADA, and NJLAD.

14. At all times material hereto, AT&T employed more than twenty (20) people.

15. At all times material hereto, AT&T acted by and through its authorized agents, servants, workmen, and/or employees within the course and scope of their employment with AT&T and in furtherance of AT&T business.

16. At all times material hereto, Plaintiff was an employee of AT&T within the meaning of the ADEA, ADA, and NJLAD.

## III.   <u>JURISDICTION AND VENUE</u>

17. The causes of action set forth in this Complaint arise under the ADEA, as

amended, 29 U.S.C. § 621, *et seq.*, the ADA, as amended, 42 U.S.C. § 12101, *et seq.*, and the NJLAD, N.J.S.A. 10:5-1, *et seq.*

18. The District Court has subject matter jurisdiction over Counts I and II (ADEA) and Count III (ADA) pursuant to 29 U.S.C. § 626(c) and 28 U.S.C. § 1331.

19. The District Court has jurisdiction over Count IV (NJLAD) pursuant to 28 U.S.C. § 1367.

20. The District Court has jurisdiction over all Counts (ADEA, ADA, NJLAD) pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and there exists complete diversity of citizenship, as Plaintiff is a citizen of the state of New Jersey and Defendants are not citizens of the state of New Jersey.

21. Venue is proper under 28 U.S.C. § 1391(b).

22. On or about April 25, 2017, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining of the acts of discrimination alleged herein.  Attached hereto, incorporated herein, and marked as Exhibit "A" is a true and correct copy of the EEOC Charge of Discrimination (with minor redactions for purposes of electronic filing of confidential/identifying information).

23. On or about December 6, 2017, the EEOC issued to Plaintiff a Dismissal and Notice of Right to Sue for Plaintiff's EEOC Charge.  Attached hereto and marked as Exhibit "B" is a true and correct copy of that Notice (with minor redactions for purposes of electronic filing of confidential/identifying information).

24. Plaintiff has fully complied with all administrative prerequisites for the

commencement of this action.

25. AT&T Services, Inc. is subject to the personal jurisdiction of this Court because, *inter alia*, the case arises out of or relates to the contacts of AT&T Services, Inc. with the state of New Jersey, the contacts of AT&T, Services, Inc. are continuous and systematic such that AT&T Services, Inc. is at home here, and/or AT&T Services, Inc. has consented to personal jurisdiction by personal service within the state via an authorized agent of the corporation.

26. AT&T, Inc. is subject to the personal jurisdiction of this Court because, *inter alia*, the case arises out of or relates to the contacts of AT&T, Inc. with the state of New Jersey and the contacts of AT&T, Inc. are continuous and systematic such that AT&T Services, Inc. is at home here.

## IV.   **FACTUAL ALLEGATIONS SUPPORTING CLAIMS**

27. Plaintiff was hired by AT&T on or about August 4, 1986, and was employed by the company for over 30 years before AT&T terminated her employment effective December 27, 2016 at the age of 60.

28. Plaintiff has a B.A. in English, an M.S. in Information systems, and a Master's Certificate in Project Management.

29. Plaintiff was an outstanding employee for AT&T.

30. Plaintiff was qualified for, and excelled at, many positions over her 30 year career with AT&T.

31. Plaintiff successfully held several different positions with AT&T, including with Bell/AT&T Labs.  She worked as, among other things, a Manager, a Project Coordinator, in Engineering and Integrated Planning, and in Network

Forecasting.

32. Plaintiff's outstanding performance was recognized by AT&T and praised by her managers and co-workers.  Without limitation:

   a.  Plaintiff's innovative skills and initiative were recognized by AT&T in Plaintiff having been awarded nine (9) patents while employed with AT&T – a major and significant achievement for which AT&T gave Plaintiff a financial award.  Indeed, Plaintiff had a patent pending at the time of her termination.

   b.  Plaintiff's performance appraisals have been positive.

   c.  Plaintiff received bonuses and merit increases.

33. Plaintiff has suffered from a physical or mental impairment(s) that substantially interfered with one or more major life activities.

34. Plaintiff has suffered from a seizure disorder (epilepsy), with accompanying cognitive/memory issues.

35.  AT&T was aware of Plaintiff's epilepsy.

36. From in or about 2012, Plaintiff held the position of Senior Market Research & Analysis Manager, reporting initially to Bob Cole (64[1]), then to Micah Trzcinski (40), and then to Glenna Eastwood (45), Director Network Planning.

37. Plaintiff was qualified for the position of Senior Market Research & Analysis Manager.

38. At all times, Plaintiff performed her job duties in a satisfactory or better manner.

39. Plaintiff's last performance review by AT&T was for the period from January 1, 2015 through December 31, 2015, during which time Plaintiff held the position of

---

[1] All ages herein are approximations.

Senior Market Research & Analysis Manager, and reported first to Mr. Trzcinski, and then to Ms. Eastwood.  Plaintiff received a Business Results Rating of Fully Meets, a Leadership Rating of Fully Meets, and an Overall Performance Rating of Fully Meets.  In their written comments, Mr. Trzcinski and Ms. Eastwood both called Plaintiff a "key contributor."  In her end of year overall comments, Ms. Eastwood wrote of Plaintiff:

> She is extremely diligent and detail oriented and maintains a high standard of quality with her work.  Kathy displays high integrity, has built good partnerships across multiple organizations, and continues to deliver on all    her commitments . . . Kathy's overall performance solidly meets expectations. Her demonstrated leadership is effective in achieving established goals.

40. In or about January 2015, Plaintiff was diagnosed with breast cancer.

41. AT&T was aware of Plaintiff's breast cancer diagnosis.

42. In or about March 2015, Plaintiff was required, as a result of Plaintiff's cancer diagnosis, to have surgery and then undergo periodic chemotherapy treatments beginning in or around May 2015 and expected to last for one year.

43. AT&T was aware that Plaintiff was undergoing chemotherapy treatments expected to last for one year.

44. In or about March 2015, Plaintiff was diagnosed with adjustment disorder with depressed mood.

45. Since in or about January, 2016, AT&T subjected Plaintiff to an age and/or disability based continuing hostile work environment.

46. Since in or about January, 2016, AT&T exhibited hostility toward Plaintiff because of her disability.

47.  Since in or about January, 2016, AT&T exhibited hostility toward Plaintiff because of her age.

48. On or about January 21, 2016, AT&T notified Plaintiff that her position was being eliminated and that, as a result, she was placed on "surplus status," to be terminated sixty (60) days thereafter unless Plaintiff secured another position with AT&T.

49. At the time of Plaintiff's surplus notification, AT&T knew Plaintiff's age (59), and knew that Plaintiff had a seizure disorder (epilepsy) and that Plaintiff had breast cancer for which she was undergoing chemotherapy treatments.

50. AT&T selected Plaintiff for "surplus" in January, 2016, because of her age and/or her disability.

51. AT&T's statement that Plaintiff's position was being eliminated was false and a pretext for age and/or disability discrimination.

52. Plaintiff's position as a Senior Research & Analysis Manager was not eliminated.

53. According to AT&T's own documents, there remained at least ten "Sr Mkt Research & Anlys Mgr" positions in the same "AWG" (Affected Work Group) within the same "Decisional Unit" as Plaintiff.

54. Further, there remained several Senior Market Research & Analysis Managers who performed the same function as Plaintiff, including at least three who reported to Ms. Eastwood, all of whom are younger than Plaintiff is.

55.  Moreover, AT&T brought in additional employees to perform work that Plaintiff had previously done.

56. According to AT&T's own documents, AT&T did not select for "surplus" eight younger and, it is believed, non-disabled individuals holding the position of Sr Mkt Research & Anlys Mgr in Plaintiff's "Decisional Unit," including several who are substantially younger than Plaintiff.

57. There remained several Senior Market Research & Analysis Managers who performed the same function as Plaintiff, including at least three who reported to Ms. Eastwood, all of whom are younger than Plaintiff and believed to be non-disabled.

58. Moreover, since the "surplus" notification, the work that Plaintiff had previously performed was performed by younger individuals, some of whom were moved into the group.

59. Based on, *inter alia,* Plaintiff's knowledge, skills, experience, and outstanding track record with AT&T, Plaintiff was at least as, or better, qualified than these younger and/or nondisabled individuals who were not selected for "surplus" status and appeared to have been retained in their current positions.

60. The stress of being placed on "surplus" status exacerbated Plaintiff's condition and worsened her health.

61. Following Plaintiff's January 2016 "surplus," Plaintiff applied for scores of open and available positions for which she was qualified.

62. Although Plaintiff had significant experience and success in many areas of the positions for which she applied, AT&T rejected Plaintiff for every one of these positions (except for a position Plaintiff was offered in Dallas, which she was unable to accept because she was undergoing cancer treatments).

63. AT&T rejected Plaintiff for these open and available positions for which she was qualified and applied because of her age and/or disability.

64. In or about March 2016, AT&T placed Plaintiff into the position of Senior System Engineer, reporting to Madhavi Aruva (40), Associate Director – Technology, who reported to Srinivasa Marella (43), Director – Technology Development.

65. Plaintiff was qualified for the Senior System Engineer position.

66. Although there were open and available, and Plaintiff had applied to, many positions for which she was exceedingly well qualified and experienced, AT&T placed Plaintiff into a new and different position in a particular area with which she did not have experience.

67. That AT&T placed Plaintiff into a new and different position in an area in which she did not have experience was a failure by AT&T to engage in the interactive process and/or was intentionally attempting to set Plaintiff up to fail because of her age and/or disability.

68. Plaintiff brought to the attention of AT&T's Chief Strategy Officer, John Donovan, during a town hall meeting that AT&T had placed her on "surplus" status, even though she was undergoing cancer treatments and that she was a valuable and innovative employee as indicated, *inter alia*, by the fact the she had received several patent awards.

69. AT&T failed to prevent or address the discriminatory conduct and further failed to take corrective and remedial measures to make the workplace free of discriminatory conduct.

70. Both Ms. Aruva and Mr. Marella were aware that Plaintiff was disabled and, in particular, that Plaintiff had previously undergone chemotherapy, and that Plaintiff had epilepsy.

71. In or about May, 2016, Ms. Aruva commented in front of Plaintiff's peers, during a meeting and when Plaintiff was not wearing a wig, on the appearance of Plaintiff's sparse hair.

72. The stress from the cancer, its side effects, having been "surplussed" and trying to adjust to a different and new position worsened Plaintiff's health and exacerbated Plaintiff's cognitive/memory difficulties.

73. Plaintiff told Ms. Aruva that she was having some difficulty managing certain tasks as a result of her conditions, including the cognitive/memory difficulties Plaintiff was experiencing, and requested reasonable accommodations.

74. Ms. Aruva was not receptive to Plaintiff's requests, and made it clear that she did not want to discuss possible accommodations.

75. Instead of engaging in an interactive process and a dialogue about reasonable accommodations, Ms. Aruva exhibited hostility toward Plaintiff by, among other things, placing Plaintiff on a strict timeline for tasks and testing Plaintiff.

76. In May 2016, Plaintiff told Human Resources that after having been "surplussed," dealing with cancer and chemotherapy, and her epilepsy and accompanying cognitive/memory issues, Plaintiff was struggling with learning the subject matter of a new position, particularly with a supervisor who was not supportive.

77. Plaintiff again requested reasonable accommodations.  Plaintiff asked Human Resources if she could be transferred into another position that was open in her

organization with which she was more familiar and/or "released" to try to find a new position.

78. Rather than engage in an interactive process and good faith dialogue regarding reasonable accommodations and/or a possible transfer into an open and available position, Human Resources informed Plaintiff that she could not be "released" from her current position to try to find a new one, and that Plaintiff only had two (2) options: wait out the time in her current job; or look for work outside of AT&T.

79. Plaintiff subsequently engaged in frustrating discussions with AT&T's third party disability administrator, which did not seem to be aimed at actually finding an accommodation for Plaintiff, and which caused Plaintiff more stress.

80. AT&T did not "release" or reassign Plaintiff from the Senior System Engineer position or otherwise accommodate Plaintiff's disability.

81. Notwithstanding her struggle with adapting to a new position under the circumstances she was facing, and AT&T's refusal to engage in a good faith dialogue regarding reasonable accommodations, Plaintiff was qualified and able to do her job.

82. Ms. Aruva gave Plaintiff a verbal assessment of her mid-year performance and indicated that there were no problems Plaintiff needed to address.

83. In or about October, 2016, Ms. Aruva asked Plaintiff if she wanted to volunteer to retire.  Plaintiff responded that she had no intention of volunteering to leave AT&T.

84. On or about October 28, 2016, AT&T again notified Plaintiff that her position was being eliminated and that, as a result, Plaintiff was placed on "surplus status," to be terminated sixty (60) days thereafter unless Plaintiff secured another position with AT&T.

85. At the time of Plaintiff's surplus notification in October 2016, AT&T knew, *inter alia*, Plaintiff's age (60), that Plaintiff had cancer, that Plaintiff had undergone chemotherapy treatments for cancer, that Plaintiff had a seizure disorder (epilepsy), that Plaintiff had been diagnosed with adjustment disorder with depressed mood, that Plaintiff had associated cognitive/memory difficulties, that the stress of having been placed on "surplus status" and then placed into a job with which Plaintiff was not familiar was exacerbating Plaintiff's cognitive/memory difficulties, that Plaintiff's manager was neither receptive to Plaintiff's accommodation requests nor supportive, that Plaintiff had asked to be "released" from her current position to try to find another one, and that Plaintiff had formally requested reasonable accommodations.

86. When Plaintiff asked Mr. Marella why she was selected for surplus, he did not respond.

87. AT&T selected Plaintiff for "surplus" in October, 2016, because of her age and/or her disability.

88. AT&T's statement that Plaintiff's position was being eliminated was false and a pretext for age and/or disability discrimination.

89. Following the "surplus," according to AT&T's own documents, there remained at least 67 "Senior-System Engineer" positions in the same "Decisional Unit" as Plaintiff, most of whom are substantially younger than Plaintiff.

90. Further, there remained several Senior System Engineers who performed the same function as Plaintiff, including at least three who reported to Ms. Aruva, all of whom are younger than Plaintiff is.

91. Of the 69 Senior-System Engineers in Plaintiff's "Decisional Unit," only two were selected for "surplus:" an individual age 52 and Plaintiff.  No one under the age of 40 was selected for surplus.

92. Of the 69 Senior-System Engineers in Plaintiff's "Decisional Unit," five were assigned to AWG 12.  AT&T never told Plaintiff the basis of her or others' assignment to AWG 12.  Of those assigned to AWG 12, Plaintiff was the oldest and the only one selected for surplus.  The four other individuals were substantially younger than Plaintiff, and, it is believed, not disabled, and were not selected for surplus.

93. Based on, *inter alia,* her knowledge, skills, experience, and outstanding track record with AT&T, Plaintiff was at least as, or better, qualified than these younger and/or nondisabled individuals who were not selected for "surplus" and appear to have been retained in their current positions.

94. When Plaintiff asked her Human Resources representative why she was selected for surplus, the representative said that she could not tell Plaintiff.

95. Since Plaintiff's October 2016 notification of surplus, Plaintiff applied for over 100 available positions with AT&T for which she was qualified.

96. Plaintiff was rejected for each one these positions.

97. AT&T rejected Plaintiff's application for these open positions for which Plaintiff applied and was qualified because of her age and/or disability.

98. AT&T failed to engage in good faith dialogue and/or or to reasonably accommodate Plaintiff, including in connection with her efforts to secure an alternative position following her notification of "surplus" status and/or failure to transfer her into a vacant position.

99. AT&T terminated Plaintiff's employment effective December 27, 2016.

100. AT&T terminated Plaintiff's employment because of her age and/or disability.

101. AT&T had instructed Plaintiff that in order to receive a severance payment under the AT&T, Inc. Severance Pay Plan, she was then required to sign the General Release and Waiver within ninety days of her termination.

102. The General Release and Waiver contained misstatements of fact, was misleading, was not knowing and voluntary, failed to comply with the strict disclosure requirements for a valid waiver of an ADEA claim per the Older Workers Benefits Protection Act ("OWBPA"), and was intended by AT&T to harm workers age 40 and over.

103. Plaintiff did not sign the General Release and Waiver.

104. AT&T's termination of Plaintiff's employment was the culmination of the age and/or disability based hostile work environment to which Plaintiff was subjected.

105. The hostile and discriminatory conduct to which Plaintiff was subjected was severe and/or pervasive enough to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment

existed, and made Plaintiff believe that the conditions of employment had been altered and that a hostile work environment existed.

106. Plaintiff's performance did not warrant: her selection for "surplus" in January, 2016; the fact that she was not selected for scores of open positions following her January, 2016 "surplus" notification;" her surplus notification in October, 2016; AT&T's rejection of her application for scores of open positions for which was qualified and applied following her October, 2016 "surplus" notification; or the termination of her employment by AT&T effective December 27, 2016.

107. Plaintiff's disability was a motivating and determinative factor in connection with AT&T's decision to place Plaintiff on "surplus" status in January 21, 2016, its rejection of Plaintiff for scores of open positions for which she was qualified and applied following her January, 2016 "surplus" notification," its decision to place Plaintiff on "surplus" status in October, 2016, its rejection of her application for scores of open positions for which was qualified and applied, its subjecting Plaintiff to a hostile work environment, and for AT&T's termination of her employment effective December 27, 2016.

108. Plaintiff's age was a motivating and determinative factor in connection with AT&T's decision to place Plaintiff on "surplus" status in January 21, 2016, its rejection of Plaintiff for scores of open positions for which she was qualified and applied following her January, 2016 "surplus" notification," its decision to place Plaintiff on "surplus" status in October, 2016, its rejection of her application for scores of open positions for which was qualified and applied, its subjecting

Plaintiff to a hostile work environment, and for AT&T's termination of her

employment effective December 27, 2016.

109. AT&T has engaged in a pattern and practice of age discrimination.

110. AT&T has a corporate culture of age bias and a public record of egregious age

discrimination that emanates from the highest levels of the company.

111. AT&T at the highest levels has publicly discussed its displeasure at having an

older workforce, its intention to transform the company for the "future," and its

desire and expectation that older workers will leave its workforce.

112. AT&T's Chief Executive Officer, Randall Stephenson, has publicly discussed

that AT&T has an aging workforce and had a need to reinvent the company.  *See*

*Gearing Up for the Cloud, AT&T Tells Its Workers: Adapt or Else,*

http://www.nytimes.com, February 13, 2016.  As part of this reinvention, AT&T

came up with a plan to "retool" its aging workforce by the year 2020.  *Id.*

113. As part of its plan – variously called "Vision 2020," "Workforce 2020,"

"Workplace 2020" – AT&T has conducted vast involuntary terminations with the

intent and effect of eliminating older workers from its workforce.  The massive

and company-wide involuntary terminations were effectuated in waves across

AT&T, Inc.'s various controlled/for payroll-purposes subsidiaries and in

accordance with centrally planned, from the top, corporate-wide policies and

procedures infected with age bias and, upon information and belief, causing a

disparate impact on older workers.

114. AT&T's discriminatory plan and scheme involves notification of "surplus" status,

a period during which "surplussed" employees remain employed and try to

secure alternative positions with AT&T, and the presentation of a fraudulent "General Release and Waiver" that AT&T knows does not comply with the OWBPA and does not release or waive an employee's claims and rights under the ADEA.

115. AT&T's three-step "surplus," then termination and fraudulent release scheme is infected with age bias.

116. AT&T placed Plaintiff on surplus status in January and then again in October, 2016, and terminated her employment effective December, 2016, as part of its age-discriminatory, three-step "surplus," then termination and fraudulent release scheme.

117. Upon information and belief, AT&T's "2020" group involuntary termination program, including its centrally determined policies and procedures, had a disparate impact on older workers, including Plaintiff.

118. AT&T has demonstrated an intent to terminate the employment of older workers and/or workers with a disability, including Plaintiff, and retain younger and/or non-disabled workers instead.

119. By and through AT&T's conduct in placing Plaintiff on surplus status in January, 2016, turning down Plaintiff's applications in the first quarter of 2016, for several jobs for which Plaintiff was qualified, failing to engage in the interactive process, failing to "release" Plaintiff from her current position or otherwise accommodate Plaintiff after she was placed as a Senior System Engineer, placing Plaintiff on surplus status in October 2016, turning down Plaintiff's applications for several jobs for which she was qualified, failing to transfer Plaintiff or otherwise

accommodate Plaintiff, subjecting Plaintiff to a hostile work environment, and/or terminating Plaintiff's employment effective December 27, 2016, AT&T has discriminated against Plaintiff because of her age and/or disability.

120. As a direct result of Defendants' discriminatory conduct, Plaintiff has in the past incurred, and will in the future incur, a loss of earnings and/or earnings capacity, loss of benefits, and other injuries, the full extent of which is not known at this time.

**COUNT I**
**VIOLATION OF THE ADEA – DISPARATE TREATMENT**

121. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint, as if fully set forth herein.

122. Defendants, AT&T, Inc. and AT&T Services, Inc., intentionally discriminated against Plaintiff because of her age.

123. Defendants have violated the ADEA by committing the foregoing acts of discrimination as alleged herein, including, without limitation, subjecting Plaintiff to a hostile work environment, selecting Plaintiff for "surplus" in October, 2016, rejecting her applications for available positions, and/or terminating her employment effective December 27, 2016.

124. As a direct result of Defendants' discriminatory conduct, Plaintiff has in the past incurred, and will in the future incur, a loss of earnings and/or earnings capacity, loss of benefits, and other injuries, the full extent of which is not known at this time.

125. Defendants' violations of the ADEA were intentional and willful under the circumstances and warrant the imposition of liquidated damages.

126. As a direct and proximate result of Defendants' violation of the ADEA, Plaintiff has sustained the injuries, damages, and losses set forth herein.

127. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and unlawful acts unless and until the Court grants the relief requested herein.

128. No previous application has been made for the relief requested herein.

**COUNT II**
**VIOLATION OF THE ADEA – DISPARATE IMPACT**

129. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint, as if fully set forth herein.

130. Defendants, AT&T, Inc. and AT&T Services, Inc., utilized practices, policies, and procedures that have disparately impacted Plaintiff.

131. AT&T's "2020" plan and/or its implementation by AT&T's three-step "surplus," then termination and fraudulent release scheme, had a disparate impact on Plaintiff.

132. As a direct result of Defendants' discriminatory conduct, Plaintiff has in the past incurred, and will in the future incur, a loss of earnings and/or earnings capacity, loss of benefits, and other injuries, the full extent of which is not known at this time.

133. Defendants, AT&T, Inc. and AT&T Services, Inc., by the discriminatory acts set forth herein, have violated the ADEA.

134. As a direct and proximate result of Defendants' violation of the ADEA, Plaintiff has sustained the injuries, damages, and losses set forth herein.

135. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and unlawful acts unless and until the Court grants the relief requested herein.

136. No previous application has been made for the relief requested herein.

## COUNT III
## VIOLATION OF THE ADA

137. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint, as if fully set forth herein.

138. Defendants, AT&T, Inc. and AT&T Services, Inc., have violated the ADA by committing the foregoing acts of discrimination against Plaintiff, including without limitation, subjecting Plaintiff to a hostile work environment, failing to engage in an interactive process and/or provide Plaintiff reasonable accommodations following her placement into Senior System Engineer position, selecting Plaintiff for "surplus" in October, 2016, failing to provide Plaintiff with a reasonable accommodation for her disability, failing to transfer and/or place Plaintiff into open and available positions for which she was qualified, rejecting her application for many positions to which she applied, and/or terminating Plaintiff's employment effective December 27, 2016.

139. Defendants acted intentionally, and with malice and/or reckless indifference to Plaintiff's rights, and their conduct warrants the imposition of punitive damages.

140. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

141. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and unlawful acts unless and until this Court grants the relief requested herein.

142. No previous application has been made for the relief requested herein.

## COUNT IV
## VIOLATION OF THE NJLAD

143. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint, as if fully set forth herein.

144. Defendants, AT&T, Inc. and AT&T Services, Inc., have violated the NJLAD by committing the foregoing acts of discrimination against Plaintiff, including without limitation: subjecting Plaintiff to a hostile work environment, selecting Plaintiff for "surplus" in January, 2016, rejecting her for open and available positions for which she was qualified following her January 2016 "surplus" notification, failing to engage in the interactive process and/or to reasonably accommodate her disability, selecting Plaintiff for "surplus" in October, 2016, rejecting her for open and available positions for which she was qualified following her October 2016 "surplus" notification, failing to engage in the interactive process and/or to reasonably accommodate her disability, including failing to transfer her into an open position, and/or terminating her employment effective December 27, 2016.

145. Said violations were intentional and willful and warrant the imposition of punitive damages.

146. Members of Defendants' upper management had actual participation in, and/or willful indifference to, Defendants' wrongful conduct described herein, and their conduct warrants the imposition of punitive damages against Defendants.

147. As a direct and proximate result of Defendants' discriminatory conduct, in violation of the NJLAD, Plaintiff has sustained the injuries, damages, and losses set forth herein, and has incurred attorney's fees and costs.

148. Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendants' discriminatory and unlawful acts unless and until the Court grants the relief requested herein.

149. No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff, Kathleen Fowler, and against Defendants, AT&T, Inc. and AT&T Services, Inc.:

a. declaring the acts and practices complained of herein to be a violation of the ADEA;

b. declaring the acts and practices complained of herein to be a violation of the ADA;

c. declaring the acts and practices complained of herein to be a violation of the NJLAD;

d. entering judgment against Defendants and in favor of Plaintiff in an amount to be determined;

e. enjoining and restraining permanently the violations alleged herein;

f. awarding compensatory damages to Plaintiff to make Plaintiff whole for all past and future lost earnings, benefits, and earnings capacity which Plaintiff has

suffered and will continue to suffer as a result of Defendants' discriminatory conduct;

g. awarding compensatory damages to Plaintiff for past and future emotional upset, mental anguish, humiliation, loss of life's pleasures, and pain and suffering;

h. awarding liquidated damages to Plaintiffs;

i. awarding punitive damages to Plaintiff;

j. awarding Plaintiffs the costs of this action, together with reasonable attorney's fees;

k. awarding Plaintiffs such other damages as are appropriate under the ADEA, ADA, and NJLAD; and,

l. granting such other and further relief as this Court deems appropriate.

**CONSOLE MATTIACCI LAW, LLC**

BY:   s/ Stephen G. Console
Stephen G. Console
Laura C. Mattiacci
Susan M. Saint-Antoine
Brian C. Farrell
Emily R. Derstine Friesen
110 Marter Avenue, Suite 502
Moorestown, NJ 08057
(856) 854-4000
(856) 854-4006 (fax)
console@consolelaw.com
mattiacci@consolelaw.com
santanto@consolelaw.com
farrell@consolelaw.com
derstinefriesen@consolelaw.com

Attorneys for Plaintiff,
Kathleen Fowler

Dated: January 16, 2018

## <u>New Jersey Local Civil Rule 11.2 Certification</u>

I hereby certify that the matter in controversy in <u>Kathleen Fowler v. AT&T, Inc.</u>

<u>and AT&T Services, Inc.</u> is not the subject of any other action pending in any court, or of

any pending arbitration or administrative proceeding.  I certify that the foregoing

statements are true. I am aware that if any of the above statements are willfully false, I

am subject to punishment.

Dated:  1/16/2018                              **CONSOLE MATTIACCI LAW, LLC**


                              BY:           s/ Stephen G. Console
                                          Stephen G. Console
                                          Laura C. Mattiacci
                                          Susan M. Saint-Antoine
                                          Brian C. Farrell
                                          Emily R. Derstine Friesen
                                          110 Marter Avenue, Suite 502
                                          Moorestown, NJ  08057
                                          (856) 854-4000
                                          (856) 854-4006 (fax)
                                          console@consolelaw.com
                                          mattiacci@consolelaw.com
                                          santanto@consolelaw.com
                                          derstinefriesen@consolelaw.com

                                          Attorneys for Plaintiff, Kathleen Fowler