**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KATHLEEN FOWLER,<br><br>   Plaintiff,<br><br>v.<br><br>AT&T SERVICES, INC., et al.,<br><br>   Defendants. | Civil Action No. 18-667 (MAS) (LHG)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendants' AT&T Services, Inc. and AT&T Inc.'s (collectively, "Defendants" or "AT&T") Motion for Summary Judgment. (ECF No. 47.) Plaintiff Kathleen Fowler ("Plaintiff" or "Fowler") opposed (ECF No. 51), and Defendants replied (ECF No. 58). Plaintiff moved for leave to file a sur-reply. (ECF No. 59.) Defendants opposed (ECF No. 60), and Plaintiff replied (ECF No. 61). Defendants provided the Court with supplemental authority. (ECF No. 62.) Plaintiff responded. (ECF No. 63.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Defendants' Motion is granted, and Plaintiff's Motion is denied.

## I. BACKGROUND

Plaintiff filed this suit against her former employer AT&T under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.*; and the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. §§ 10:5-1, *et seq.* (Am. Compl. ¶¶ 120–40, ECF No. 14.) Plaintiff alleges that AT&T treated her differently because of her age and disability, failed to provide her with reasonable accommodations, and subjected her to a hostile working environment. (*See id.*; *see also* Pl.'s Opp'n Br. 6, ECF No. 51-2.)[1]

---

[1] According to Plaintiff, the following claims should proceed to the jury:

1. Disparate treatment because of age and/or disability based on Plaintiff's January 21, 2016 surplus selection, (ADEA, ADA, NJLAD);
2. Disparate treatment because of age and/or disability based on Plaintiff's October 28, 2016 surplus selection and corresponding December 27, 2016 termination, (ADA, ADEA, NJLAD);
3. Failure to accommodate based on AT&T's denial of Plaintiff's request for additional time to complete work tasks such as writing assignments, (ADA, NJLAD);
4. Failure to accommodate based on AT&T's failure to reassign/transfer Plaintiff to a vacant position, (ADA, NJLAD);
5. Failure to accommodate based on AT&T's initial denials of Plaintiff's requests to be made "releasable", (ADA, NJLAD); and
6. Hostile work environment based on disability, (ADA, NJLAD).

(Pl.'s Opp'n Br. 6.) These claims are not outlined in the Amended Complaint. (*See generally* Am. Compl.)

Plaintiff began working for AT&T in 1986. (FSMF ¶¶ 5–6.)[2] From February 2012 until January 21, 2016, Plaintiff was a Senior Market Research & Analysis Manager within the company's Technology Planning and Engineering ("TP&E") business unit. (*Id.* ¶¶ 7–8.) From September 2015 until January 21, 2016, Plaintiff reported to and was directly supervised by Glenna Eastwood ("Eastwood"). (*Id.* ¶ 10; ASMF ¶ 34.)

In December 2015, AT&T planned to reduce the number of TP&E positions by consolidating roles, eliminating duplicative work, and reducing nonessential work. (ASMF ¶ 21.) In that process, 267 TP&E employees, including Fowler, were selected for the January Surplus. (FRASMF ¶ 22.) AT&T grouped positions within TP&E into Affected Work Groups ("AWGs"). (ASMF ¶ 23(a).) Plaintiff's position was part of AWG 4. (*Id.* ¶ 26.) Eastwood assessed Fowler by rating her performance, leadership, skills, and experience. (*Id.* ¶ 34.) Ultimately, Fowler received the sixth-lowest score in AWG 4 and the second-lowest score among those assessed by Eastwood. (*Id.* ¶ 39.)

On January 21, 2016, AT&T told Fowler, then 59 years old, that she was placed on surplus. (FSMF ¶ 13; ASMF ¶ 44.) AT&T states that Fowler's job duties were automated, discontinued, or

---

[2] The Court cites to the following statements of fact and responses to statements of fact:

- AT&T's Statement of Undisputed Material Facts ("ASMF"), ECF No. 47-1;
- Fowler's Response to AT&T's Statement of Undisputed Material Facts ("FRASMF"), ECF No. 51-3;
- Fowler's Counterstatement of Undisputed Material Facts ("FSMF"), ECF No. 51-1; and
- AT&T's Response to Fowler's Counterstatement of Undisputed Material Facts ("ARFSMF"), ECF No. 58-1.

Under the Local Civil Rules, it is not enough to merely state disagreement with a statement of material fact. *See* L. Civ. R. 56.1. If a party disputes a material fact without citation to supporting documents, the material fact "shall be deemed undisputed for purposes of the summary judgment motion." *Id.*

3

otherwise shared and assumed by three employees—who were 49, 55, and 57 years old. (ASMF ¶ 55.) Although Fowler disputes that her position was ever eliminated, she provides no evidence of another person taking Fowler's position. (*See* FRASMF ¶ 55.) Fowler, as with other employees placed on surplus, had the option to either end her employment and promptly receive severance benefits, or to remain on payroll for sixty days and apply for internal positions before determining severance eligibility. (FSMF ¶ 13; ASMF ¶ 56.) Fowler chose to continue her employment and apply for other positions. (ASMF ¶ 59.)

In February 2016, Fowler applied for a Senior System Engineer position in the SD&E[3] unit located in Middletown, New Jersey. (FSMF ¶ 14; ASMF ¶ 86.) The job required "[s]enior level technical expertise" and "deep technical knowledge and subject matter expert[ise] on ATT technologies." (ASMF ¶ 72.) Her would-be supervisor Madhavi Aruva ("Aruva") interviewed her for the position, considered her prior experience, her education, and resume, and ultimately offered her a position over other candidates. (*Id.* ¶ 74; FRASMF ¶ 74.) Around the same time, Fowler received another offer for a Lead Financial Analyst position in Dallas, Texas, but she declined it because relocating was not realistic given her cancer treatments. (ASMF ¶¶ 61, 63, 85.)

On March 1, 2016, Fowler started her new position. (FSMF ¶ 14.) Shortly after starting in the position, Fowler informed Aruva that she was undergoing chemotherapy for breast cancer. (FSMF ¶ 64.) During Fowler's first week in her new position, Aruva commented on Fowler's hair during a meeting. (*Id.* ¶ 71.) According to Fowler, "[she] stopped wearing [her] wig . . . and [Aruva] was like, oh, my goodness, you got a haircut, what happened to your hair, in front of everybody when [she] walked into the room." (*Id.*) Fowler added that Aruva "just didn't understand that was a [w]ig I was wearing." (ARFSMF ¶ 71.)

---

[3] The parties do not define SD&E in their submissions.

4

On April 26, 2016, Fowler wrote in an e-mail message to one of Aruva's supervisors, Srinivasa Marella ("Marella") that she was receiving treatment for breast cancer and that she had been experiencing side effects. (Marella E-Mail Message, Ex. A to Marella Decl., ECF No. 47-27; *see also* ASMF ¶ 87(a); FRASMF ¶ 87(a).) She also provided:

> If I had a better grasp of the job prior to joining I would have opted for the Dallas job in Finance that I was offered. That was a job where they provided examples of the work and I knew it was a match. . . . Bottom line, my current job is not a skills match for me. . . . Note that my experience in technical work was 13+ years ago and at the Labs architecture level of detail.

(Marella E-Mail Message.) She concluded by requesting that she "remain . . . releasable until I can locate a position where I can contribute more effectively to the business."[4] (*Id.*)

On May 2, 2016, Fowler wrote in an e-mail message to Aruva:

> Is there somewhere in this VP or SVP org[anization] where my excel and other skills could contribute more effectively to the business. Trying to perform the current assigned tasks just doesn't make sense. I'm not suited or qualified for this position. My interpretation of the position, when originally interviewed, is not how I understood it to be nor does it align with my resume. The latter should have been caught by whoever reviewed it when I submitted for the position.

(Aruva E-Mail Message, Ex. B to Marella Decl., ECF No. 47-28 at *4; *see also* ASMF ¶ 88; FRASMF ¶ 88.)

On May 16, 2016, Aruva placed Fowler on a "Coaching Action Plan." (FSMF ¶ 84.) Fowler protested the vague ambiguous nature of the Coaching Plan to her supervisors, upper management, and Human Resources. (*Id.* ¶ 87.) On May 23, 2016, Fowler was made releasable. (*Id.* ¶ 92.)

---

[4] Being "releasable" is "[a] status assigned to an employee who is eligible to pursue and accept other job opportunities within AT&T." (FSMF ¶ 77.)

5

As of at least May 18, 2016, Aruva's supervisors and certain Human Resources personnel were aware of Fowler's cancer diagnosis and treatment. (ASMF ¶ 69; FSMF ¶¶ 66–67.) Sometime in May, Fowler mentioned to Aruva that she was not able to perform the job because she was going through chemotherapy. (FSMF ¶ 69.) At some point, three employees assigned to train Fowler told Aruva that Fowler was having difficulties understanding the training and that she needed more time to train and carry out job tasks. (*Id.* ¶ 70.)

On June 3, 2016, Plaintiff submitted a written request for a job accommodation through AT&T's Integrated Disability Service Center ("IDSC"). (*Id.* ¶ 95.) She informed IDSC that she had epilepsy. (*Id.*) On and around June 6, Plaintiff requested an accommodation to address unspecified memory and focus weaknesses. (*Id.* ¶ 101.) From June to August, Plaintiff's health care providers were in touch with Human Resources about Plaintiff's health and reasonable accommodations, including additional time to perform work. (*See id.* ¶¶ 102–10.) In mid-August 2016, Plaintiff concluded her Coaching Action Plan. (*Id.* ¶ 119.)

On October 28, 2016, AT&T again selected Plaintiff for surplus ("the October Surplus"). (*Id.* ¶ 18.) Fowler's supervisors had ranked her as the lowest-performing employee on Aruva's team. (*Id.* ¶ 131.) Again, Fowler had sixty days to secure another position with AT&T or else be terminated. (*Id.* ¶ 132.) From October 28, 2016, through December 27, 2016, Plaintiff submitted 102 job applications and received no offers for employment. (*Id.* ¶ 19.) On December 27, 2016, AT&T terminated Plaintiff's employment. (*Id.* ¶ 20.)

## II. LEGAL STANDARD

Summary judgment is granted only if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is material if it "might affect the outcome of the suit under the governing law." *Id.* Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Id.*

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in [her] favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citation omitted). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

While the moving party bears the initial burden of proving an absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to "set forth specific facts showing that there is a genuine [dispute] for trial." *Id.* at 250. "Unsupported allegations, subjective beliefs, or argument alone . . . cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

### III. DISCUSSION

#### A. Discrimination Claims

Because Plaintiff's age and disability discrimination claims rely on circumstantial evidence, the Court proceeds according to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See DeSantis v. New Jersey Transit*, 756 F. App'x 197, 202 (3d Cir. 2019). Under this framework, Fowler has "the burden of establishing a prima facie case of discrimination, with the particular requirements differing based on the form of discrimination alleged." *Id.* (citing *Burton v. Teleflex Inc.*, 707 F.3d 417, 426–27 (3d Cir. 2013)). Once Fowler meets her initial burden, the burden of production shifts to AT&T "to articulate some legitimate, non[-]discriminatory reason for the employee's rejection." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (internal quotation marks and citation omitted). Once AT&T satisfies its "relatively light" burden, "the burden of production shifts back to [Fowler] to provide evidence from which a factfinder could reasonably infer that [AT&T's] proffered justification is merely a pretext for discrimination." *Burton*, 707 F.3d at 426; *Fuentes*, 32 F.3d at 764–65 (citation omitted).

The ADA makes it unlawful to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). To establish a prima facie case of disparate treatment under the ADA, Fowler must show: (1) she is a disabled person within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by AT&T; (3) she has suffered an otherwise adverse employment decision; and (4) the adverse employment decision was the result of discrimination. *See Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998). Fowler must ultimately show that her disability "actually motivated" AT&T's decisions. *Woloshin v. Rutgers Univ.*, No. 15-2588, 2016 WL 5660460, at *3 (D.N.J. Sept. 28, 2016) (quoting *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003)).

8

To establish a prima facie case of disability discrimination under the NJLAD, Fowler must demonstrate that (2) she is a member of a protected class; (2) she was otherwise qualified and performing the essential functions of the job; (3) she suffered an adverse employment action; and (4) AT&T thereafter sought similarly qualified individuals for that job. *Victor v. New Jersey*, 4 A.3d 126, 141 (N.J. 2010); *Jones v. School Dist. of Pa.*, 198 F.3d 403, 410–11 (3d Cir. 1999). As to Fowler's age discrimination claim under the NJLAD, the fourth element requires a showing that the plaintiff was replaced with "a candidate sufficiently younger to permit an inference of age discrimination." *Bergen Commercial Bank v. Sisler*, 723 A.2d 944, 956 (N.J. 1999) (citation omitted).

The ADEA prohibits employment discrimination "because of" an individual's age when the individual is at least 40 years old. 29 U.S.C. § 623(a)(1). To establish a prima facie case of disparate treatment under the ADEA, Fowler must make a showing that: (1) she is forty years of age or older; (2) AT&T took an adverse employment action against her; (3) she was qualified for the position in question; and (4) she was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus. *Burton*, 707 F.3d at 426.

"Age discrimination claims under the ADEA and [NJ]LAD are governed by the same standards and allocation of burdens of proof." *Lawrence v. Nat'l Westminster Bank N.J.*, 98 F.3d 61, 65 (3d Cir. 1996). At all times, the burden of persuasion remains with Fowler to establish that age was the "but-for" cause of AT&T's adverse actions. *Palmer v. Britton Indus., Inc.*, 662 F. App'x 147, 150 (3d Cir. 2016) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)) (standard in ADEA and NJLAD cases); *see also Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009) (finding that "the but-for causation standard required by *Gross* does not conflict with [the Third Circuit's] continued application of the *McDonnell Douglas* paradigm in

age discrimination cases"). At summary judgment, it is not enough for Fowler to show that age is *a factor* motivating AT&T's adverse actions. Fowler must point to "evidence supporting an inference that [her] age had a 'determinative influence' on the decision." *Palmer*, 662 F. App'x at 147 (citing *Gross*, 557 U.S. at 176).

AT&T concedes that Fowler is a member of protected classes but argues that Fowler cannot otherwise establish a prima facie case of discrimination. (Defs.' Moving Br. 25–26, ECF No. 47-29.) AT&T argues that (1) "Fowler did not suffer an adverse employment action in the January Surplus," (*id.*); (2) "[a]t the time of the October Surplus, Fowler was admittedly not qualified for the job in SD&E," (*id.* at 27); and (3) "Fowler cannot otherwise show that her termination occurred under circumstances giving rise to an inference of discrimination," (*id.* at 28–29). The Court addresses each argument in turn.

### 1.     Prima Facie Case: Adverse Employment Action

While termination certainly constitutes an adverse employment action, *Abramson v. William Paterson College of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001), the definition of "adverse employment action" is broad enough to capture conduct that "is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997)). "[L]ateral transfers and changes of title and reporting relationships, are generally insufficient to constitute adverse employment actions." *Langley v. Merck & Co.*, 186 F. App'x 258, 260 (3d Cir. 2006) (finding that a plaintiff's "title, office, reporting relationship and responsibilities may have changed is insufficient to make [the plaintiff's] reassignment an adverse employment action").

Fowler argues the fact that she involuntarily lost her job is itself a cognizable adverse employment action, and that her surplus selection was "tantamount to a termination." (Pl.'s Opp'n Br. 10.) Fowler further argues that the January Surplus caused her significant stress, that her subsequent role as Senior System Engineer involved different job duties, and that her new role disadvantaged her career advancement prospects. (*Id.* at 10–11 (citing *Obester v. Lucas Assocs.*, No. 08-3491, 2010 U.S. Dist. LEXIS 144161, at *116–23 (N.D. Ga. Aug. 2, 2010)).)

Here, the Court finds that Fowler has not met her burden to establish the January Surplus constituted an adverse employment action. There is no dispute as to the following facts: Plaintiff lost her position as Senior Market Research & Analysis Manager; she was placed on the January Surplus; she received two months on payroll to find another position; and she subsequently obtained a position as Senior System Engineer. Plaintiff did not lose her employment with AT&T following the January Surplus. She does not proffer evidence that her new position was less desirable or that she received lesser pay or benefits. Similarly, she does not provide any facts that being placed on the January Surplus was "tantamount to a termination." *Cf. Obester*, 2010 U.S. Dist. LEXIS 144161, at *114 (holding that a factfinder could find a plaintiff was terminated where the employer knew the plaintiff would not accept the alternative position).

Moreover, Plaintiff's alleged employment condition changes are neither substantiated by the record nor would amount to an adverse employment action if substantiated. First, she provides no legal basis for the Court to find that the January Surplus constitutes an adverse action because it caused her significant stress. Next, Fowler's argument that the two positions she held involved different job duties also fails. Although Fowler provides her job duties as a Senior Market Research & Analysis Manager (Pl.'s Opp'n Br. 10 (citing FSMF ¶ 9)), she fails to provide a list of her duties as a Senior System Engineer. She resultingly fails to show that her duties and responsibilities were

"significantly" different than those of her previous position. *See Howell v. Millersville Univ. of Pa.*, 283 F. Supp. 3d 309, 324 (E.D. Pa. 2017) (finding adverse employment action element met where a plaintiff's demotion left the plaintiff with "significantly diminished material responsibilities"); *but see Langley*, 186 F. App'x at 260 (finding no adverse employment action where the plaintiff's responsibilities may have changed).

Lastly, Plaintiff's argument that her Senior System Engineer role "disadvantaged her career advancement prospects because it required her to start over in a new AT&T organization with an entirely different reporting structure" is also unsupported by the record. Although Plaintiff provides evidence that she reported to new supervisors in her new role, (*see* Pl.'s Opp'n Br. 10 (citing FSMF ¶¶ 14–17)), she provides no facts to show that this new reporting structure would disadvantage her career prospects. *See Langley*, 186 F. App'x at 260 (affirming district court's grant of summary judgment for employer because, although "[the plaintiff] asserts that her new title is a dead-end position that offers less opportunity for financial reward, she [had] not adduced any evidence supporting this contention"); *but see Torre v. Casio, Inc.*, 42 F.3d 825, 831 n.7 (3d Cir. 1994) (finding the plaintiff created a material fact issue concerning whether he was transferred from his position to a dead-end job that had effectively been eliminated before he was transferred to it).

Fowler has failed to raise a genuine dispute of material fact as to whether the January Surplus constituted action that is "serious and tangible enough to alter [Fowler's] compensation, terms, conditions, or privileges of employment." *Cardenas*, 269 F.3d at 263. Fowler, accordingly, fails to show that the January Surplus was an adverse employment action and fails to establish an essential element of her January Surplus-based disparate treatment claim. The Court grants AT&T summary judgment on this claim.

### 2. Prima Facie Case: Qualified Individual

To show that she is "qualified" under the ADA and NJLAD, Fowler must establish that (1) she satisfies the requisite skill, experience, education and other job-related requirements of the Senior Systems Engineer position and that (2) she can, with or without reasonable accommodation, perform the essential functions of the position. *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 278 (3d Cir. 2001) (citation omitted); *see also Rich v. Verizon N.J. Inc.*, No. 16-1895, 2017 WL 6314110, at *17 (D.N.J. Dec. 11, 2017) (finding a plaintiff who is not "qualified" under the ADA cannot be "qualified" under the NJLAD). "The determination of whether an individual with a disability is qualified is to be made at the time of the employment decision." *Rich*, 2017 WL 6314110, at *11 (citation omitted). Similarly, to be "qualified" under the ADEA, Fowler must demonstrate that she met the objective qualifications of the position. *Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir. 1995) (citation omitted).

Fowler argues that she "objectively qualified" for the Senior System Engineer position but only provides as proof Aruva's sworn testimony that Aruva believed she could perform the job. (*See* Pl.'s Opp'n Br. 12–13.) Fowler argues that Aruva's initial determination when Aruva hired her should end the Court's inquiry. (*Id.* at 12 (citing *Howell*, 283 F. Supp. 3d at 323–34).)

Here, Fowler fails to show that she was qualified for the Senior Systems Engineer position. First, that Aruva initially determined she was qualified does not and cannot end the inquiry. If that fact alone is determinative, courts would not need to consider the qualifications of any plaintiff where the employer had already hired her. Rather, it is settled that the employee has the burden to demonstrate that she was qualified for the position. *See, e.g.*, *Gaul*, 134 F.3d at 580 ("[T]he burden is on the employee to prove that [s]he is 'an otherwise qualified' individual." (citation omitted));

*Rich*, 2017 WL 6314110, at *12–17 (stating that it is the court's duty to consider and determine whether the plaintiff is qualified).

Plaintiff also argues that the Court should only consider whether she "objectively qualified" but provides no proof that she satisfies those objective measures. For example, she does proffer evidence that she had the requisite "[s]enior level technical expertise" and "deep technical knowledge and subject matter expert[ise] on ATT technologies." (*See* ASMF ¶ 72.) Furthermore, Fowler wholly ignores the second required showing under the ADA—that she can perform the essential functions of the position, with or without reasonable accommodation.

Fowler also admitted on more than one occasion after starting the position that she does not have the skills for the position. (*E.g.*, ASMF ¶ 87(a).) She had stated: "I'm not suited or qualified for this position. My interpretation of the position, when originally interviewed, is not how I understood it to be nor does it align with my resume. The latter should have been caught by whoever reviewed it when I submitted for the position." (ASMF ¶ 88.) Plaintiff neither contests that she made this and other similar statements, nor does she effectively rebut them. (*See, e.g.*, FRASMF ¶¶ 87(a), 88.) Although Fowler disputes that no one communicated to her the skills necessary for the position at any time before she was hired, (*see, e.g.*, FRASMF ¶¶ 70(b), 70(c); FSMF ¶¶ 55–56.), she may not presently ignore the skills needed for the position.

Because Fowler does not point to facts demonstrating that she satisfies the prerequisites for the Senior Systems Engineer position or that she can perform the essential functions of the position, Fowler fails to create a genuine dispute of material fact as to her qualifications for the position. Fowler, accordingly, cannot establish a prima facie case of discrimination based on that position. The Court, accordingly, grants AT&T summary judgment on Fowler's claims that are based on the Senior Systems Engineer position.

### 3. Prima Facie Case: Inference of Unlawful Discrimination

That Plaintiff failed to show she suffered an adverse employment action in the January Surplus and failed to show she was "qualified" for the Senior Systems Engineer position is sufficient to grant AT&T summary judgment on Plaintiff's disparate treatment claims. Nonetheless, the Court considers whether Plaintiff has set forth facts from which discrimination may be inferred.

AT&T argues that Fowler cannot show that her termination occurred under circumstances giving rise to an inference of discrimination. (Defs.' Moving Br. 28.) In response, instead of arguing that circumstances give rise to an inference of unlawful discrimination, Plaintiff directs the Court to facts that purportedly support a showing of pretext. (Pl.'s Opp'n Br. 29 n.13.) She argues that "the prima facie case and pretext inquiries often overlap" and "evidence supporting the prima facie case is often helpful in the pretext stage, and nothing about the *McDonnell Douglas* formula requires [the Court] to ration the evidence between one stage or the other." (*Id.* at 9 n.3 (quoting *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 370 (3d Cir. 2008).)

While that may be true, the inquiries are nonetheless distinct, and the Court must nonetheless examine different case law and make two separate determinations. Indeed, the *C.A.R.S.* court made these two separate inquiries. *See* 527 F.3d at 365–71 (discussing circumstances giving rise to inference of discrimination in Section II.B.3. and discussing pretext in Section II.C.)

Here, Fowler fails to proffer evidence that courts have generally recognized as giving rise to an inference of discriminatory animus. Plaintiff alleges disparate treatment claims under the ADEA and NJLAD, but she demonstrates no evidence that she was ultimately replaced by an individual who was sufficiently younger. *Burton*, 707 F.3d at 426, *Sisler*, 723 A.2d at 956, or that

15

anyone spoke to her inappropriately about her age, *DeSantis*, 756 F. App'x at 204. Plaintiff alleges disparate treatment claims under the ADA and NJLAD, but she has not shown that AT&T had previously discriminated against her for her disabilities, that AT&T discriminated against other persons with disabilities, or that AT&T treated similarly situated persons without a disability more favorably. *Proudfoot v. Arnold Logistics, LLC*, 59 F. Supp. 3d 697, 708 (M.D. Pa. 2014), *aff'd*, No. 14-4703, 2015 WL 5881530 (3d Cir. Oct. 8, 2015); *Victor*, 4 A.3d at 141.

Rather, as to the January Surplus, Plaintiff offers a series of convoluted analyses on AT&T's surplus assessments and processes, statistics on demographic data, and general corporate policy. (Pl.'s Opp'n Br. 16–21.) As to the October Surplus, Plaintiff argues that AT&T never assessed her for surplus, that AT&T now offers different reasons for selecting Plaintiff for surplus, and that AT&T violated its own surplus guidelines. (*Id.* at 21–28.) Plaintiff also alleges a third set of facts that support pretext and, according to Plaintiff, give rise to an inference of discrimination. (*Id.* at 28–30.) Despite these attempts, Plaintiff fails to connect how these circumstances give rise to an inference of discrimination. She fails to proffer evidence from which a reasonable juror could infer that she was discriminated for her age or disability. Accordingly, Fowler has failed to make a sufficient showing on an essential element of her prima facie case.

### 4. Pretext

Even if Plaintiff stated a prima facie case of discrimination, she has not come forward with evidence from which a reasonable juror could find that AT&T's reasons for placing Fowler on the January and October Surpluses are mere pretext. As to the January Surplus, Fowler received the sixth-lowest score in AWG 4 and the second-lowest score among those assessed by Eastwood. (Defs.' Moving Br. 29 (citing ASMF ¶ 39).) As to the October Surplus, Fowler lacked

qualifications, skills, and experience for the job. (*Id.*) These reasons are plausible and reasonable. *Stucke v. City of Phila.*, 685 F. App'x 150, 156 (3d Cir. 2017).

To show pretext and defeat summary judgment, Fowler may either (1) discredit AT&T's proffered reasons, circumstantially or directly, or (ii) adduce evidence, circumstantial or direct, that "discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes*, 32 F.3d at 764. Fowler must present evidence that would allow a factfinder to reasonably infer "that *each* of [AT&T's] proffered non-discriminatory reasons . . . was either a post hoc fabrication or otherwise did not actually motivate the employment action." *Id.* It is not enough to show that AT&T's decision was wrong or mistaken. *Id.* at 765. "While this standard places a difficult burden on [Fowler], it arises from an inherent tension between the goal of all discrimination law and our society's commitment to free decision[-]making by the private sector in economic affairs." *Id.* (citation and internal quotation marks omitted).

Here, Fowler neither successfully discredits each of AT&T's proffered legitimate non-discriminatory reasons nor adduces circumstantial evidence that discrimination was more likely than not a motivating or determinative cause of placing Fowler on surplus. The subjective beliefs and arguments that she proffers do not allow her to survive summary judgment. As a result, even if Fowler had established a prima facie case of discrimination, she is unable to establish pretext.

In summary, Fowler fails to satisfy various elements of her prima facie case for age and disability discrimination under the ADA, ADEA, and NJLAD. Even if Fowler had established a prima facie case, AT&T articulated legitimate, nondiscriminatory reasons for placing Fowler on surplus and her termination, and Fowler is unable to demonstrate pretext. Plaintiff has, therefore, failed to show that a factfinder could reasonably find that age discrimination was the but-for cause of her termination, *see Gross*, 557 U.S. at 177–78, or that disability discrimination actually

motivated her termination. *see Woloshin*, 2016 WL 5660460, at *3. Accordingly, the Court grants summary judgment in favor of AT&T on Fowler's disparate treatment claims.

### B. Failure to Accommodate Claims

AT&T also moves for summary judgment on Fowler's failure to accommodate claims. (Defs.' Moving Br. 32–35.) "To prevail on a failure to accommodate claim, a plaintiff must first present the prima facie elements required in any disability discrimination claim." *Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 237 (D.N.J. 2015); *see also Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 311 (3d Cir. 1999) (stating that, under the ADA § 12112(b)(5)(A), an employer commits unlawful discrimination if the employer does "not mak[e] reasonable accommodations to . . . an otherwise qualified individual with a disability who is an applicant or employee").

As the Court has already determined, Fowler cannot establish a prima facie case for disability discrimination because she cannot show that she was qualified for the Senior Systems Engineer position. Because Plaintiff failed to present the elements of her disability discrimination claim, she cannot prevail on her failure to accommodate claims. The Court, accordingly, grants AT&T summary judgment on Plaintiff's failure to accommodate claims.

### C. Disability-Based Hostile Work Environment Claim

AT&T moves for summary judgment on Fowler's hostile work environment claim. (Defs.' Moving Br. 35.) To determine whether an environment is hostile the Court must consider "all the circumstances . . . [including] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *see also Taylor v. Metzger*, 706 A.2d 685, 688–89 (N.J. 1998). Significantly, "offhanded

18

comments, and isolated incidents (unless extremely serious) are not sufficient to sustain a hostile work environment claim." *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005) (citation and internal quotation marks omitted).

AT&T argues that the record is devoid of conduct that would be "severe or pervasive enough" to alter the conditions of Fowler's employment and that Fowler never heard Eastwood, Aruva, or Marella say anything to suggest they were biased against her because of her disability. (Defs.' Moving Br. 35. (citing ASMF ¶¶ 49, 143).) In opposition, Fowler argues that certain "foregoing bulleted facts [that support a finding of pretext] also substantiate Plaintiff's disability-based hostile work environment claims under the ADA/NJLAD." (Pl.'s Opp'n Br. 29 n.13.)

The Court is unsure to which bulleted facts Plaintiff references. Even if the Court considers the four "bulleted facts" in Section IV.A.b.ii.5. preceding Plaintiff's footnote (Pl.'s Opp'n Br. 28–29), Plaintiff fails to satisfy her burden. That Aruva remarked on Plaintiff's hair is the only fact undisputed and supported by the record. (FSMF ¶ 64.) This offhanded comment is insufficient to sustain Plaintiff's claim. *See Caver*, 420 F.3d at 262. The remaining facts are "[u]nsupported allegations, subjective beliefs, [and] argument" which "cannot forestall summary judgment." *Read*, 397 F. Supp. 3d at 625. Again, AT&T is entitled to a judgment as a matter of law because Fowler has failed to make a sufficient showing of the elements of her case to which she has the

burden of proof. *Celotex*, 477 U.S. at 323. The Court grants AT&T summary judgment on Plaintiff's hostile work environment claim.[5]

## IV. CONCLUSION

AT&T's Motion for Summary Judgment is granted, and Fowler's Motion for Leave to File a Sur-Reply in Opposition to Defendants' Motion for Summary Judgment is denied. The Court will enter an appropriate Order.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

---

[5] Plaintiff requests leave to file a sur-reply because, *inter alia*, AT&T's reply brief raises new arguments on Plaintiff's hostile work environment claim and failure to accommodate claims. (Pl.'s Moving Br. 2, ECF No. 59.) Here, AT&T raises no new issues of law on reply that would warrant submission of a sur-reply. (*Compare* Defs.' Moving Br. *with* Defs.' Reply Br., ECF No. 58.) Rather, AT&T attempts to address Fowler's footnote that certain facts supporting her disability-based disparate treatment claim also support her hostile work environment claim. (*See* Defs.' Reply Br. 16.) Moreover, the "[four] main arguments" in Plaintiff's sur-reply (Pl.'s Reply Br. 3–5) could have been made in Plaintiff's opposition. A sur-reply is not a vehicle to bring arguments that could have been made in an opposition. *Zahl v. Local 641 Teamsters Welfare Fund*, No. 09-1100, 2010 WL 3724520, at *3 (D.N.J. Sept. 14, 2010) (citation omitted). The Court, accordingly, will not consider arguments that Plaintiff now attempts to make in a sur-reply and denies Plaintiff's Motion.